JOHN N. MOSCATO
Senior Counsel
Environment and Natural Resources Division,
  Environmental Enforcement Section
United States Department of Justice
999 18th Street, South Terrace - Suite 370
Denver, CO 80202
Telephone: (303) 844-1380
john.moscato@usdoj.gov

CHRISTOPHER A. CROFTS
United States Attorney

NICHOLAS VASSALLO (WY Bar # 5-2443)
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124
nick.vassallo@usdoj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 JUL 8 PM 1 33

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COTTONWOOD CREEK, INC.,<br><br>　　　　Defendant. | Civil Action 15-CV-108 |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for civil penalties brought against Cottonwood Creek, Inc. (hereafter the "Defendant" or "Cottonwood") under the Clean Water Act ("CWA") 33 U.S.C. § 1251 et seq.

## JURISDICTION, VENUE, AUTHORITY, AND NOTICE

2. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to Sections 309(b) and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E) and (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Authority to bring this action is vested with the United States Department of Justice by Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

4. Venue is proper in this District pursuant to Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395(a), because the events giving rise to the claims alleged herein occurred in this District.

5. The United States has given notice of commencement of this action to the State of Wyoming as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANT

6. Defendant Cottonwood, a petroleum pipeline company, is an Oklahoma corporation with its principal office in Enid, Oklahoma. At all times material to this Complaint, Defendant was authorized to do business in Wyoming.

7. At all times material to this Complaint, Defendant owned and operated an on-shore oil gathering, pumping, and storage station located in Big Horn County, Wyoming at the Bonanza Station which gathered crude oil from various production facilities into a single 1,470,000-gallon storage tank (hereafter the "Facility").

2

8. Defendant purchased the Facility from Red Butte Pipeline Company in November 2001.

9. Defendant sold the Facility to Washakie Pipeline Company, LLC, in February 2012.

## STATUTORY AND REGULATORY BACKGROUND

### The CWA's Prohibition of Discharges of Oil

10. Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1), defines "oil" as "oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil."

11. Crude oil is "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1) and 40 C.F.R. § 112.2.

12. Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2), defines "discharge" as including but "not limited to, any spilling, leaking, pumping, pouring, emitting, emptying, or dumping . . . ."

13. Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10), defines "onshore facility" as "any facility . . . of any kind located in, on, or under, any land within the United States other than submerged land."

14. Section 311(a)(6)(B) of the CWA, 33 U.S.C. § 1321(a)(6)(B), defines "owner or operator" in the case of an onshore facility as "any person owning or operating such onshore facility . . . ."

15. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "waters of the United States, including the territorial seas."

16. Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7), defines "person" to include "an individual, firm, corporation, association, [or] a partnership."

3

17. Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), the President, through a delegation to EPA, Exec. Order No. 11735, 38 Fed. Reg. 21243 (Aug. 3, 1973), as amended by Executive Order 12418, 48 Fed. Reg. 20891 (May 10, 1983), has determined by regulation that certain quantities of oil that may be harmful to the public health or welfare or environment of the United States.

18. For purposes of Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), 40 C.F.R. § 110.3 defines harmful quantities as discharges of oil that "[v]iolate applicable water quality standards," or "[c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines."

19. The Wyoming Department of Environmental Quality ("WDEQ") Water Quality Rules and Regulations, Chapter 1, Section 29, requires that in all Wyoming surface waters, substances attributable to or influenced by the activities of man shall not be present in amounts which would cause: (a) the oil and grease content to exceed 10 mg/L; or (b) the formation of a visible sheen or visible deposits on the bottom or shoreline, or damage or impairment of the normal growth, function or reproduction of human, animal, plant or aquatic life.

20. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the unauthorized discharge of any pollutant by any person.

21. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" as any "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged

into water." Oil is a pollutant within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

22. Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3), authorizes the Administrator to bring a civil action in accordance with subsection (b) "[w]henever on the basis of any information available to him the Administrator finds that any person is in violation of section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title . . . ."

23. Section 311(b)(3) of the CWA prohibits "[t]he discharge of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, . . or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States . . ., in such quantities as may be harmful . . . ." See, 33 U.S.C. § 1321(b)(3).

24. An action to impose a civil penalty for violations of Section 311(b)(3), 33 U.S.C. § 1321(b)(3), may be brought in the district court of the United States for the district in which the defendant is located, resides, or is doing business, and such court shall have jurisdiction to assess such penalty. 33 U.S.C. § 1321(b)(7)(E).

25. With respect to unauthorized discharges of oil prohibited under Sections 301(a), and 311(b)(3) of the CWA, 33 U.S.C. §§ 1311(a) and 1321(b)(3), Section 309(d) of the CWA, 33 U.S.C. 1319(d), provides that any person who, among other things, violates Section 301 of the CWA shall be subject to civil penalties. Section 311(b)(7)(A) additionally provides that "any person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil . . . is discharged in violation of paragraph [311(b)](3), shall be subject to a civil penalty . . . ." See, 33 U.S.C. § 1321(b)(7)(A). Civil penalty amounts authorized under Sections 309(d) and 311(b)(7)(A) have been adjusted under the Civil Penalties Inflation Adjustment Act of 1990, 28

U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and U.S. EPA regulations codified at 40 C.F.R. Part 19. See 73 Fed. Reg. 75340 (Dec. 11, 2008).

<u>The CWA's Spill Prevention Control and Countermeasure Requirements</u>

26. Pursuant to Section 311(j)(1)(C) of the CWA, 33 U.S.C. § 1321(j)(1)(C), the President is authorized, among other things, to issue regulations "establishing procedures, methods, and equipment and other requirements for equipment to prevent discharges of oil and hazardous substances from vessels and from onshore facilities and offshore facilities, and to contain such discharges . . . ." By Executive Order No. 11548, 35 Fed. Reg. 11677 (July 20, 1970), and Section 2(b)(1) of Executive Order No. 12777, 56 Fed. Reg. 54757 (Oct. 18, 1991), the President delegated to EPA his Section 311(j)(1)(C) authority to issue the regulations for non-transportation-related onshore facilities.

27. The Spill Prevention Control and Countermeasure ("SPCC") regulations at 40 C.F.R. Part 112, promulgated by EPA pursuant to Section 311(j)(1)(C) of the CWA, 33 U.S.C. § 1321(j)(1)(C), and Executive Order No. 11548, establish "procedures, methods, equipment, and other requirements to prevent the discharge of oil from non-transportation-related onshore and offshore facilities into or upon the navigable waters of the United States or adjoining shorelines, or into or upon the waters of the contiguous zone, . . . or that may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States . . . ." 40 C.F.R. §112.1(a)(1).

28. The SPCC regulations apply to owners and operators of onshore facilities engaged in drilling, producing, gathering, storing, processing, transferring, distributing, or consuming oil and oil products, which, due to their location, could reasonably be expected to discharge oil in quantities that may be "harmful to the public health or welfare or the

environment," as defined by 40 C.F.R. § 110.3, "into or upon the navigable waters of the United States or adjoining shorelines." 40 C.F.R. § 112.1(b). Additionally, for Part 112 to apply, among other things, the aggregate aboveground storage capacity of the facility must exceed 1,320 U.S. gallons of oil. 40 C.F.R. § 112.1(d)(2)(ii).

29. The owner or operator of an SPCC-regulated facility that began operations before January 10, 1974, shall have prepared a written SPCC plan not later than July 10, 1974, and have fully implemented a written SPCC plan not later than January 10, 1975. 40 C.F.R. § 112.3(a) (2002). The owner or operator of an SPCC-regulated facility that began operations between January 10, 1974, and February 16, 2002, shall have prepared an SPCC plan not later than six months after the date the facility began operations and, generally, have fully implemented an SPCC plan not later than one year after the date the facility began operations. 40 C.F.R. § 112.3(b) (2002).

30. For facilities coming into existence after August 16, 2002, and for facilities subject to the SPCC regulations before that date that had prepared SPCC Plans in accordance with the SPCC regulations, the effective date for implementing the SPCC Plan requirements added by the 2002 amendments to the SPCC regulations was extended to November 10, 2011. 67 Fed. Reg. 47042, 47143 (July 17, 2002); 68 Fed. Reg. 1348, 1351 (January 9, 2003); 68 Fed. Reg. 18890, 18894 (April 17, 2003); 69 Fed. Reg. 48794, 48798-48799 (August 11, 2004); 71 Fed. Reg. 8462, 8466-8467 (February 17, 2006); 74 Fed. Reg. 29136, 29141-29142 (June 19, 2009); 75 Fed. Reg. 63093, 63102-63103 (October 14, 2010).

31. The regulations which govern preparation and implementation of SPCC Plans for Defendant's facility are set forth at 40 C.F.R. § 112.3, 112.5, 112.7, 112.8, and 112.20(e).

32. Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), each day of each violation of SPCC requirements is subject to a civil penalty. Civil penalty amounts authorized under Section 311(b)(7)(A) of the CWA have been adjusted under the Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and U.S. EPA regulations codified at 40 C.F.R. Part 19. See 73 Fed. Reg. 75340 (Dec. 11, 2008).

### The CWA's Facility Response Plan Requirements

33. Pursuant to Sections 311(j)(5)(A)(i) and (C)(iv) of the CWA, 33 U.S.C. §§ 1321 (j)(5)(A)(i) and (C)(iv), and 40 C.F.R. § 112.20, the owner or operator of a facility which, because of its location, "could reasonably be expected to cause substantial harm to the environment by discharging oil into or on the navigable waters or adjoining shorelines" shall prepare and submit a Facility Response Plan ("FRP") to EPA and, pursuant to 40 C.F.R. § 112.21, is also required to "develop and implement a facility response training program and a drill/exercise program. . . ."

34. Regulations at 40 C.F.R. § 112.20(f)(1) among other things provide that a facility can reasonably be expected to cause substantial harm to the environment if the facility has an oil storage capacity of over one million gallons and is located such that a discharge from the facility could cause injury to fish and wildlife and sensitive environments.

35. 40 C.F.R. §112.20(a) specifies when an FRP plan must be prepared and submitted to EPA.

36. Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), each day of each violation of FRP requirements is subject to a civil penalty. Civil penalty amounts authorized under Section 311(b)(7)(A) of the CWA have been adjusted under the Civil Penalties

Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and U.S. EPA regulations codified at 40 C.F.R. Part 19. See 73 Fed. Reg. 75340 (Dec. 11, 2008).

## GENERAL ALLEGATIONS

### Discharge of Oil

37. Defendant is a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7).

38. The Facility is an "onshore facility" within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

39. At all times material to this Complaint Defendant "own[ed]," and "operate[d]" the Facility within the meaning of Section 311(a)(6)(B) of the CWA, 33 U.S.C. § 1321(a)(6)(B), and was the "person in charge of [the]. . . onshore facility" within the meaning of Section 311(b)(7)(A) of the CWA. 33 U.S.C. § 1321(b)(7)(A).

40. The Facility gathered and stored "oil," within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1), and 40 C.F.R. § 112.2, from various production facilities into a single 1,470,000-gallon storage tank.

41. On or about March 8, 2010, approximately 162 barrels (6,804 gallons) of oil, within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1), and 40 C.F.R. § 112.2 were "discharge[ed]," as that term is defined in Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2), from a pipeline at Defendant's Facility that carried oil from production facilities to the Facility's storage tank.

42. As a result of the discharge from Defendant's Facility on or about March 8, 2010, oil flowed overland and into an unnamed, perennially flowing tributary of the Nowood River.

43. Although much of the discharged oil was recovered from the unnamed tributary within a week of the spill, oil recovery and remediation efforts continued until November 2010.

44. The quantity of oil discharged from Defendant's Facility into an unnamed, perennially flowing, tributary of the Nowood River on or about March 8, 2010 was "harmful" within the meaning of 40 C.F.R. § 110.3 in that the oil discharged caused a visible sheen of oil and discoloration on the surface of the unnamed tributary and on its adjoining shorelines, and violated WDEQ's Water Quality Rules and Regulations, Chapter 1, Section 29.

45. Defendant's oil was discharged into the unnamed tributary approximately 3.3 miles from the point that the unnamed tributary flows into the Nowood River. The Nowood River flows year around.

46. The Nowood River flows into the Big Horn River approximately 20.6 miles downstream from the confluence of the unnamed tributary and the Nowood River.

47. The Big Horn River is designated as navigable-in-fact by the U.S. Army Corps of Engineers.

48. The unnamed tributary of the Nowood River into which Defendant discharged oil is a "navigable water" and "water of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

### Spill Prevention Control and Countermeasure Plan

49. Pursuant to Section 311(j)(1)(C) of the CWA, 33 U.S.C. § 1321(j)(1)(C), and 40 C.F.R. § 112.1, Defendant, as the owner and/or operator of an SPCC-regulated facility, is subject to the SPCC regulations.

50. Defendant began operating the Facility on or before November 2001.

51. The SPCC regulations require any owner or operator of an on-shore facility that, due to its location, could reasonably be expected to discharge oil in quantities that may be harmful, as that term is defined in 40 C.F.R. § 110.3, to provide proper prevention and containment equipment, including at a minimum, appropriate containment and/or diversionary structures or equipment to prevent discharged oil from reaching "navigable waters or adjoining shorelines." See, 40 C.F.R. § 112.1.

52. Defendant's Facility, due to its location, could reasonably be expected to discharge oil in quantities that may be harmful, as that term is defined in 40 C.F.R. § 110.3, into "navigable waters or adjoining shorelines."

53. Defendant's existing SPCC Plan was not prepared in accordance with 40 C.F.R. §§ 112.7 and 112.8 and had numerous deficiencies, including among others:

   a. the facility diagram was incomplete and did not include incoming piping, all the transfer pumps and associated piping, and a clear representation of how oil moved from the tank to the outgoing pipeline, in violation of 40 C.F.R. § 112.7(a)(3); and

   b. failure to discuss the age of, and the integrity testing schedule for, the tank at the Facility in violation of 40 C.F.R. § 112.8.(c)(6).

<u>Facility Response Plan</u>

54. At all times material to this Complaint Defendant owned and operated a Facility that contained a tank with a shell capacity of over one million gallons.

55. Applying the requirements of 40 C.F.R. §112.20(f)(1)(ii)(B) and Appendix C thereto, at all times material to this Complaint the Facility could have reasonably been expected to cause substantial harm to the environment including but not limited to injury to fish and wildlife and sensitive environments.

56. From the time when Defendant acquired the Facility in November 2001 until on or about February 28, 2012, including the time of the discharge of oil from Defendant's Facility on or about March 8, 2010, Defendant did not have an FRP for its Facility.

### FIRST CLAIM FOR RELIEF

(Discharges of Oil in Violation of the CWA)

57. Paragraphs 1 through 56 are re-alleged and incorporated by reference.

58. Defendant's unauthorized discharge of oil described in paragraphs 41 through 48, above, into waters of the United States and onto their adjoining shorelines in quantities which may be harmful to the public health or welfare or environment, constitutes a violation of Section 301(a) and Section 311(b)(3) of the CWA, 33 U.S.C. §§ 1311(a) and 1321(b)(3).

59. Defendant is subject to a civil penalty under Section 309(d) of the CWA, 33 U.S.C. 1319(d), for the spill identified in Paragraphs 41 through 48, above, which violates Sections 301(a) of the CWA, 33 U.S.C. § 1311(a). Alternatively, Defendant is subject to a civil penalty under Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), for the spill identified in Paragraphs 41 through 48, above which violates Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3). Civil penalty amounts authorized under Sections 309(d) and 311(b)(7)(A) of the CWA, have been adjusted under the Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and U.S. EPA regulations codified at 40 C.F.R. Part 19. See 73 Fed. Reg. 75340 (Dec. 11, 2008).

### SECOND CLAIM FOR RELIEF

(Inadequate SPCC Plan)

60. Paragraphs 1 through 59 are re-alleged and incorporated by reference.

61. Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), Defendant's failure to prepare in writing an adequate SPCC Plan in accordance with 40 C.F.R. §§ 112.7 and 112.8 subjects Defendant to civil penalties. Civil penalty amounts authorized under Sections 309(d) and 311(b)(7)(A) have been adjusted under the Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and U.S. EPA regulations codified at 40 C.F.R. Part 19. See 73 Fed. Reg. 75340 (Dec. 11, 2008).

### THIRD CLAIM FOR RELIEF

(Lack of Facility Response Plan)

62. Paragraphs 1 through 61 are re-alleged and incorporated by reference.

63. Defendant violated Sections 311(j)(5)(A)(i) and (C)(iv) of the CWA, 33 U.S.C. §§ 1321(j)(5)(A)(i) and (C)(iv), and 40 C.F.R. § 112.20 by failing to prepare and submit a FRP for its Facility.

64. Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), Defendant's failure to prepare and implement a FRP subjects Defendant to civil penalties. Civil penalty amounts authorized under Sections 309(d) and 311(b)(7)(A) have been adjusted under the Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and U.S. EPA regulations codified at 40 C.F.R. Part 19. See 73 Fed. Reg. 75340 (Dec. 11, 2008).

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, the United States of America, respectfully requests that this Court enter judgment against Defendant for:

A. Civil penalties for Defendant's violations of Section 301(a) or Section 311(b)(3) of the CWA, 33 U.S.C. §§ 1311(a) or 1321(b)(3), relating to Defendant's March 2010 discharge of oil into an unnamed tributary of Nowood Creek;

B. Civil penalties for Defendant's violation of the SPCC regulations, including 40 C.F.R. §§ 112.7 and 112.8;

C. Civil penalties for Defendant's failure to prepare and submit a FRP in accordance with Sections 311(j)(5)(A)(i) and (C)(iv) of the CWA, 33 U.S.C. §§ 1321 (j)(5)(A)(i) and (C)(iv), and 40 C.F.R. § 112.20; and

D. Such other relief as this Court deems appropriate.

Dated this 8th day of June, 2015.

Respectfully submitted,

/s/
JOHN N. MOSCATO
Senior Counsel
Environment and Natural Resources Division,
   Environmental Enforcement Section
United States Department of Justice
999 18th Street, South Terrace - Suite 370
Denver, CO 80202
Telephone: (303) 844-1380


CHRISTOPHER A. CROFTS
United States Attorney

/s/
NICHOLAS VASSALLO
Assistant United States Attorney
District of Wyoming
Post Office Box 668
Cheyenne, Wyoming 82003
Telephone: (307) 772-2124

Of Counsel

Sheldon H. Muller,
Senior Attorney
Legal Enforcement Program
Office of Enforcement, Compliance and Environmental Justice
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, CO 80202-1129